UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| SALINA S.,<br><br>　　Plaintiff,<br><br>vs.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>　　Defendant. | Case No.  1:20-CV-00515-REP<br><br>**MEMORANDUM DECISION AND ORDER** |

　　Pending is Petitioner Salina S.'s Petition for Review (Dkt. 1) and an accompanying Brief in Support of Petition to Review (Dkt. 20) appealing the Social Security Administration's final decision finding her not disabled and denying her claim for disability insurance benefits.  *See* Pet. for Rev. (Dkt. 1).  This action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## ADMINISTRATIVE PROCEEDINGS

　　Petitioner is a forty-six-year-old woman who alleges that she is unable to work due to a constellation of physical and mental problems, including post-traumatic stress disorder ("PTSD"), depression, anxiety, endometriosis, degenerative disc disease of the spine, migraines, fibromyalgia, insomnia, and degenerative changes of the right foot with plantar fasciitis.  AR[1]

---

[1] Citations to "AR __" refer to the cited page of the Administrative Record (Dkt. 16).

**MEMORANDUM DECISION AND ORDER - 1**

60-61, 345.  Petitioner has applied for disability benefits on four occasions.  AR 58, 178, 193.  Petitioner's first two applications were denied in 1999 and 2010 after hearings in front of an Administrative Law Judge ("ALJ").  AR 178, 186, 193.

Throughout and following this period, Petitioner continued to intermittently work.  AR 33, 346, 354, 409.  While the exact dates of her employment are unclear, from roughly 2009 to 2016, Petitioner was a caregiver for a home healthcare company.  AR 33, 346, 354, 409.  Petitioner stopped working at the end of 2016.  AR 346.

Shortly thereafter, on April 19, 2017, Petitioner filed her third claim for disability benefits.  AR 193.  This claim was denied on August 3, 2017, after an initial review, and Petitioner did not exhaust her appeals.  *Id.*

About a year later, on June 28, 2018, Petitioner filed the application for supplemental security income ("SSI") that forms the basis of this appeal.  AR 58.  In this application, Petitioner continues to allege disability due to fibromyalgia, endometriosis, and mental health issues.  *Compare* AR 178-179 *with* AR 345.  Petitioner asserts a disability onset date of September 1, 2008, long before she stopped working.  *Id.*

As with her previous claims, Petitioner's current claim was denied initially and on reconsideration.  AR 58.  Petitioner requested a hearing in front of an ALJ.  *Id.*  On February 5, 2020, the claim went to a hearing before ALJ Lyle Olson.  *Id.*  On March 27, 2020, the ALJ issued a decision that was unfavorable to Petitioner.  AR 55-68.  In this decision, the ALJ treated Petitioner's onset date as the date of her fourth disability application, June 28, 2018.  AR 60.  Petitioner does not contest this decision, which appears related to Petitioner's work history and prior findings of non-disability.

**MEMORANDUM DECISION AND ORDER - 2**

Petitioner appealed the ALJ's post-June 2018 finding of non-disability, however, to the Appeals Council. The Council denied Petitioner's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security. AR 2-8.

Having exhausted her administrative remedies, Petitioner filed this case. Petitioner raises three points of error. First, Petitioner contends that substantial evidence does not support the ALJ's finding that her mental health conditions were not severe. Pt.'s Br. at 9-13 (Dkt. 20). Second, Petitioner maintains that the ALJ failed to provide legitimate reasons for rejecting the opinions of her treating doctor – Dr. Wayne H. Blauer – about her mental health. *Id.* at 14-17. Third, Petitioner argues that the ALJ also erred in rejecting Dr. Blauer's opinions about her physical health. *Id.* at 17-19.

## STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance. *Trevizo*, 871 F.3d at 674. It "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

**MEMORANDUM DECISION AND ORDER - 3**

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a person of a reasonable mind to accept the conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable weight is given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## THE SEQUENTIAL PROCESS

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial

**MEMORANDUM DECISION AND ORDER - 4**

work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant is engaged in SGA, disability benefits are denied regardless of his or her medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522, 416.922. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal a listed impairment, the claim cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e).

**MEMORANDUM DECISION AND ORDER - 5**

In the fourth step of the evaluation process, the ALJ decides whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. An individual's past relevant work is work she performed within the last 15 years, or 15 years prior to the date that disability must be established, if the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin,* 759 F.3d 995, 1011 (9th Cir. 2014). If the claimant can do such other work, he is not disabled; if the claimant cannot do other work and meets the duration requirement, he is disabled.

## THE ALJ's FINDINGS

The ALJ found that Petitioner suffers from the following severe impairments: morbid obesity, fibromyalgia, endometriosis, degenerative disc disease of the lumbar spine, degenerative changes of the right foot with plantar fasciitis, severe degenerative changes of the medial naviculocuneiform joint, mild retrocalcaneal bursitis, tenosynovitis, and evidence of prior inversion injury. AR 60-61. The ALJ determined that these impairments affect Petitioner's ability to engage in work-related activities in a variety of manners, including that Petitioner is limited to sedentary work, can only lift 10 pounds occasionally, can only sit for six hours a day,

**MEMORANDUM DECISION AND ORDER - 6**

and can only walk for two hours a day. AR 63. The ALJ concluded that these physical limitations would prevent Petitioner from returning to her past work as a caregiver. AR 67. The ALJ found, however, that Petitioner's limitations would not prevent her from performing an alternative range of sedentary work, including working as a food and beverage order clerk, a charge account clerk, or in an unskilled and sedentary packaging job. AR 67-68. The ALJ, therefore, found that Petitioner was not disabled. AR 68.

## DISCUSSION

I. The ALJ erred at Step Two when he failed to fully and fairly evaluate Petitioner's history of mental health treatment.

    a. *The Standard of Review at Step Two*

Petitioner's first challenge on appeal is that the ALJ erred in finding that her medically determinable mental health conditions did not rise to the level of a severe impairment during the period of alleged disability. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1522(a). This is not a high standard. *See Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (explaining that Step Two is a "de minimis screening device used to dispose of groundless claims").

As it relates to mental health disorders, at Step Two, the ALJ considers a claimant's functioning in four broad mental domains that encompass all or almost all human thought and activity. Known as the "paragraph B" criteria, these domains are: (i) understanding, remembering, and applying information; (ii) interacting with others; (iii) concentrating, persisting, and maintaining pace; and (iv) adapting or managing oneself. 20 C.F.R. §§ 404.1520a(b)-(c). The ALJ must rate the claimant's degree of limitation in these areas using a five-point scale: none, mild, moderate, marked, or extreme. 20 C.F.R. § 404.1520a(c)(4). Mental health impairments may only be labeled non-severe if all four ratings are "none" or

**MEMORANDUM DECISION AND ORDER - 7**

"mild" *and* the evidence does not "otherwise indicate[] that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1).

This is consistent with the Social Security Administration's long-standing acknowledgment that "the severity regulation is to do no more than allow the Secretary to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working." Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *2 (January 1, 1985). It follows that ALJs must exercise "[g]reat care . . . in applying the not severe impairment concept." *Id.* at *4. For example, before rejecting a claim at Step Two, an ALJ must conduct "a careful evaluation of the medical findings which describe" the impairment and issue "an informed judgment about [the impairment's] limiting effects on the individual's physical and mental [abilities] to perform basic work activities." *Id.*

The ALJ's decision does not fully accord with these standards.

      b. *The Medical Evidence of Petitioner's Mental Health*

Petitioner has a long-standing history of depression and other mental health issues, dating back over a decade. AR 179, 517. These conditions, however, have not consistently impeded Petitioner's ability to work. In 2010, for example, the Social Security Administration found that Petitioner's depression, PTSD, and anxiety were not severe based in part on the assessment of a consulting examiner and based on Petitioner's testimony that her depression had never stopped her from working. AR 179. Since that time, Petitioner's complaints regarding her mental health have waxed and waned, with Petitioner sometimes telling her medical providers she is feeling better and sometimes reporting more intrusive symptoms. *See, e.g.*, AR 517, 562, 592, 599, 611, 632, 719, 754, 991, 1008, 1629.

**MEMORANDUM DECISION AND ORDER - 8**

In the period leading up to and immediately following her most recent application for disability benefits, Petitioner's medical records indicate that her mental health was not causing Petitioner significant functional issues.

Specifically, after restarting Zoloft in December 2017 (AR 517), Petitioner made the following reports to her doctor:

- On January 16, 2018, Petitioner told her primary care doctor, Dr. Blauer, that her depression was "doing better." AR 514. Her doctor kept her on the same dose of Zoloft without conducting any depression screening or mental testing. AR 514-516.

- On February 14, 2018, Petitioner told Dr. Blauer that the Zoloft had been "great" and was keeping her depression at bay. AR 511. Dr. Blauer conducted a brief depression screening, called the PHQ-2,[2] which indicated that Petitioner was not feeling down, depressed, or hopeless and was not experiencing any anhedonia. AR 511-512.

- On March 15, 2018, Petitioner told Dr. Blauer she was "doing better" on a somewhat higher dose of Zoloft. AR 505.

- On April 10, 2018, Petitioner saw Dr. Blauer for congestion, a sore throat, and back pain. AR 502. Petitioner did not complain of any mental health issues. *Id.*

- On May 16, 2018, Petitioner saw Dr. Blauer for pain management. AR 499. During the PHQ-2 screening, Petitioner affirmed that she was continuing to have no issues with feeling down, depressed, or hopeless. AR 500.

---

[2] The PHQ-2 is comprised of two questions, which "inquire[] about the degree to which an individual has experienced depressed mood and anhedonia over the past two weeks. Its purpose is not to establish final diagnosis or to monitor depression severity, but rather to screen for depression." *Irene v. Berryhill*, No. 18-CV-00038, 2019 WL 1349560, at *11 n.19 (N.D.N.Y. Mar. 26, 2019) (citing American Psychological Ass'n, Patient Health Questionnaire (PHQ-9 & PHQ-2), available at https://www.apa.org/pi/about/publications/caregivers/practice-settings/assessment/tools/patient-health).

**MEMORANDUM DECISION AND ORDER - 9**

- On May 30, 2019, Petitioner's urologist noted that she had a "normal mood and affect" during her visit.  AR 1045.

- On June 21, 2018, Petitioner told Dr. Blauer her anxiety was "up," but that she had not been as depressed.  AR 496.  On the PHQ-2, she continued to rate her current level of depression as "not at all."  AR 497.

- On July 18, 2018, Petitioner confirmed that her dose of Zoloft (sertraline) was a "good dose."  AR 493.  She once again rated her current level of depression as "not at all."  AR 494.

- On August 15, 2018, Petitioner asked Dr. Blauer to fill out disability paperwork on her behalf.  This included a mental health questionnaire.  AR 1162.  If Dr. Blauer completed any disability forms at that time, they are not in the record.  He did, however, make notes in his own records regarding Petitioner's functioning.  These notes only list physical limitations and a comment that Petitioner "wonders" if she has bipolar.  AR 1162-1163.  Dr. Blauer did not document any ongoing mental limitations as of August 2018.  *Id.*

Based on these records, the state agency doctors who reviewed Petitioner's file reasonably concluded that Petitioner's mental health conditions were not severe and only caused mild mental health limitations.  AR 196-197 and 211-212.  In reaching this conclusion, the reviewing doctors specifically noted Petitioner's negative reports on the PHQ-2.  These opinions were issued on August 29, 2018 and September 25, 2018.  *Id.*

Over the course of the next year, Petitioner would begin reporting, and Dr. Blauer would begin documenting, higher levels of depression.  On October 5, 2018, for example, while Petitioner told Dr. Blauer she had been "doing fairly well," she affirmed that did have some

**MEMORANDUM DECISION AND ORDER - 10**

depression." AR 1159. Her PHQ-9[3] score was 10, which correlates with moderate depression.[4] AR 1159; *see also* AR1157. By December 2018, this score had increased to 15, which is generally classified as moderately severe depression. In addition, Petitioner reported worsening anxiety, trouble sleeping, and elevated PTSD symptoms. AR 1151, 1153-1154. Dr. Blauer prescribed Petitioner both Zoloft and Trazodone. AR 1153.

Over the course of 2019, Petitioner's PHQ-9 scores vacillated from a low of 5, which represents mild depression, to a high of 24, which represents severe depression. AR 1081, 1114. Most of the time, however, Petitioner's PHQ-9 screenings indicated either moderate or moderately severe depression. *Compare* AR 1136, 1139, 1142, 1145, 1147-1148 (consistently scoring 18 in January and February 2019); AR 1133 (scoring 12 in March 2019); AR 1130 (scoring 16 and 21 in April 2019); AR 1117, 1120, 1124 (scoring 14 in May 2019); AR 1108, 1111 (scoring 13 and 24 in July of 2019); AR 1098, 1101, 1105 (scoring 15 in August 2019); AR 1095 (scoring 17 in early September 2019); AR 1083, 1087 (10 in mid-October and early November 2019) *with* AR 1093, 1089 (scoring 9 once each in September and October 2019); AR 1114 (scoring 6 in June 2019) and AR 1081 (scoring 5 in late November 2019).

---

[3] PHQ-9 refers to a specific patient health questionnaire that is a longer version of the PHQ-2. It "is a[n] instrument for making criteria-based diagnoses of depressive and other mental disorders commonly encountered in primary care." *Norman v. Berryhill*, No. 17-cv-04108-SI, 2018 WL 4519952, at *2 (N.D. Cal. 2018) (citing Kurt Kroenke, MD, et al., *The PHQ-9: Validity of a Brief Depression Severity Measure*, 16 J. Gen. Intern. Med. 606 (2001)) (internal quotation marks omitted).

[4] PHQ-9 scores are generally interpreted as follows: minimal depression (0-4); mild depression (5-9); moderate depression (10-14); moderately severe depression (15-19); severe depression (20-27). *See* Kurt Kroenke, MD, et al., *The PHQ-9: Validity of a Brief Depression Severity Measure*, 16 J. Gen. Intern. Med. 606 (2001) (available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1495268/); *see also Mae v. Saul*, No. 1:19-CV-03061-MKD, 2020 WL 3620092, at *6 (E.D. Wash. Mar. 6, 2020).

**MEMORANDUM DECISION AND ORDER - 11**

During this period, in addition to the PHQ-9 results, Petitioner reported feeling worthless, struggling with racing thoughts, and having trouble concentrating. AR 1107, 1147. In response, Dr. Blauer regularly monitored and periodically increased Petitioner's medications, for example, giving her more Trazodone, adding amitriptyline to her prescription list, and increasing its recommended dosage. AR 1107, 1129, 1132. Petitioner sometimes described doing well on these medications, but just as often stated that the pills worked some days and not others. *Compare* AR 1113 and 1133 *with* AR 1126 and 1129. Dr. Blauer recommended counseling, but Petitioner denied the services due to cost. AR 1147-1148.

On November 26, 2019, Dr. Blauer completed a mental impairment questionnaire that was drafted by Petitioner's attorney. AR 527-529. On this questionnaire, Dr. Blauer indicated that Petitioner had depression, PTSD, and bipolar disorder. When asked to identify how these conditions presented, Dr. Blauer checked every box in a list of a possible mental health symptoms, including loss of intellectual ability of 15 IQ points or more, autonomic hyperactivity, inflated self-esteem, and nonorganic disturbance of vision or speech or hearing or use of a limb. AR 528. Dr. Blauer further opined that Petitioner had marked or extreme limitations in all mental domains, including marked limitations in understanding, remembering, and carrying out simple instructions, extreme limitations in attention and concentration, marked limitations in interacting with the public, and extreme limitations in maintaining socially appropriate behavior and adhering to basic standards of neatness/cleanliness. AR 529. As evidence for these conclusions, Dr. Blauer wrote that Petitioner's "PHQ-9 is 16." *Id.*

    c. The ALJ's Step Two Analysis

As part of his evaluation of the paragraph B criteria, the ALJ provide the following summary of Petitioner's mental health treatment history:

**MEMORANDUM DECISION AND ORDER - 12**

> The record shows minimal complaints from the claimant regarding her mental health. She is treated with psychotropic medications from her primary care provider with little changes since the application date. She did complain of worsening symptoms in 2019 due to some family stressors, but generally reported that medication improved her mental health symptoms. The record does not show any counseling sessions, hospitalizations, or emergency room visits due to mental health symptoms. Mental status examinations have been normal or unremarkable throughout the record, or clearly based on subjective complaints and not objective assessment.

AR 61 (internal citations to the record omitted). Based on this summary and on the ALJ's assessment of Petitioner's activities of daily living, the ALJ found that Petitioner had only mild mental health limitations. AR 61-62.

The Court agrees with Petitioner that this analysis is unsupported by substantial evidence. In reaching this conclusion, the Court is mindful that the ALJ's interpretation of the medical evidence is entitled to deference, as long as it was reasonable. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."). That deference, however, is shaped by Step Two's narrow purpose – weeding out weak claims. *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) ("applying our normal standard of review to the requirements of step two, we must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that Webb did not have a medically severe impairment or combination of impairments") (internal quotation marks and alteration omitted); *see also Tadesse v. Kijakazi*, No. 20-16064, 2021 WL 5600149, at *1 (9th Cir. Nov. 30, 2021) (unpublished) (an ALJ erred by finding the claimant's depression non-severe where there was not a "total absence of objective evidence of severe medical impairment that would permit a finding of no disability at step two") (internal citations omitted).

**MEMORANDUM DECISION AND ORDER - 13**

Here, Petitioner's complaints about her mental health waxed and waned over the period of alleged disability. In such cases, the ALJ must review the medical record as a whole to assess the claimant's overall well-being and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) and *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (mental health treatment records "must be viewed in light of the overall diagnostic record"); *see also* SSR 85-28, 1985 WL 56856, at *4. Where an ALJ fails to do so and instead "picks out a few isolated instances of improvement" to conclude a claimant is capable of working, that is error. *Id.*; *see also Diedrich v. Berryhill*, 874 F.3d 634, 642 (9th 2017) (it is "improper" for an ALJ to discount a claimant's mental health allegations by cherry picking examples from the record where the claimant is experiencing an absence of symptoms). As written, the ALJ's analysis and summary of the medical evidence falls short of these standards.

For example, the ALJ found that Petitioner made "minimal complaints" regarding her mental health to medical providers. AR 61. This is an unreasonably miserly reading of the record. From October 2019 until November 2019, when the medical record ends, Petitioner regularly reported symptoms of moderately severe depression. *See supra* pg. 11. This included multiple complaints of feeling down, depress, or hopeless "nearly every day." *See*, *e.g.*, AR 1095, 1098, 1101, 1105, 1111, 1119, 1124.

The ALJ only acknowledged these complaints in a half-hearted way, attributing them to family stressors and claiming that they were alleviated by medication. AR 61. The record is more complicated. While Petitioner did report good weeks, on other occasions, she told her doctor that the pills she was taking were only intermittently effective. *Compare* AR 1113 and 1133 *with* AR 1126 and 1129. In addition, despite increases in depression medication, her PHQ-9 scores remained elevated throughout 2019. *See supra* pg. 11.

**MEMORANDUM DECISION AND ORDER - 14**

In highlighting these facts, the Court does not adopt Petitioner's view of the record or suggest that Petitioner's depression was clearly disabling. Reasonable minds could disagree about the functional impact and intensity of Petitioner's depression. What is clear, however, is that Petitioner was regularly complaining of moderately severe symptoms of depression from late 2018 until the end of the medical record. The ALJ erred by failing to fully acknowledge this history. AR 61 (selectively citing office visits where Petitioner reported no depression or lower PHQ-9 scores).

This error was compounded by two additional flaws in the ALJ's reasoning. First, the ALJ cited Petitioner's failure to receive any counseling as evidence of mild mental health issues. AR 61. As Petitioner points out, however, the medical record indicates that Dr. Blauer recommended Petitioner go to counseling, but Petitioner declined because she claimed she could not afford it. AR 1147. While the ALJ was not required to robotically credit this isolated record,[5] the ALJ was required to discuss it before treating Petitioner's failure to pursue counseling as proof that that she only suffered minimal mental health impairments. *See* SSR 16-3p, 2017 WL 5180304, at * 9 (October 25, 2017) ("We will not find an individual's symptoms inconsistent with [the frequency or extent of the treatment sought] without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."); *see also Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999) ("Although [the Ninth Circuit has] held that an unexplained, or inadequately explained, failure to seek treatment ... can cast doubt on the sincerity of [a]

---

[5] *See Flaten v. Secretary of Health & Human Servs.*, 44 F.3d 1453, 1464 (9th Cir. 1995) (affirming an ALJ's decision where the "discounted [the petitioner's] claim that lack of money prevented her from seeking help for ongoing [back] problems, because she sought appropriate medical care from a Dr. Matthews for other medical symptoms, such as abdominal pain and gall bladder problems, during the intervening years").

**MEMORANDUM DECISION AND ORDER - 15**

claimant's pain testimony, [it has] proscribed the rejection of a claimant's complaints for lack of treatment when the record establishes that the claimant could not afford it."). The ALJ failed to satisfy this requirement.

Second, the ALJ summarily dismissed any non-normal mental status evaluations documented by Petitioner's doctors as "clearly based on subjective complaints and not objective assessment." AR 61. In making this determination, the ALJ cited to the entirety of Dr. Blauer's records. *Id.* As best the Court can tell, this finding relates to Dr. Blauer's PHQ-9 screenings. But labeling the PHQ-9 scores "subjective," is not a legitimate reason, standing alone, to disregard them.

The Ninth Circuit has repeatedly held that an ALJ may not reject the findings of a psychologist "simply because of the relative imprecision of the psychiatric [or psychologic] methodology" which necessarily depends "in part on the patient's self-report, as well as on the clinician's observations of the patient." *Buck v. Berryhill*, 869 F.3d 1040, 1049) (9th Cir. 2017). The reason for this rule is that clinical interviews and mental status evaluations, while always based on self-reports, are nevertheless "objective measures" that ALJs may not routinely disregard. *Id.* In line with these rulings, district courts have generally treated PHQ-9 scores as probative evidence that an ALJ should consider. *See Fern M.L. v. Kijakazi,* No. 21-CV-851-PLA, 2022 U.S. Dist. LEXIS 137564, *28-29 (the ALJ erred in ignoring a petitioner's "PHQ-9 assessments reflecting mostly moderately severe depression"); *see also Gallupe v. Sedgwick Claims Mgmt. Servs.*, 358 F. Supp. 3d 1183, 1193 (W.D. Wash. February 14, 2019) (a plan administrator erred in concluding that PHQ-9 and GAD-7 scores indicating severe depression were not objective evidence, "particularly in the context of a disorder that is inherently subjective and self-reported") and *Harrison v. Saul*, No. 4:18-CV-00177-CWD, 2019 WL

**MEMORANDUM DECISION AND ORDER - 16**

4544547, at *12 (D. Idaho Sept. 19, 2019) ("a review of the record indicates certain objective findings, namely Petitioner's PHQ-9 scores, repeatedly showed Petitioner suffering from psychiatric symptoms).

Indeed, the ALJ indirectly relied on Petitioner's low PHQ-2 scores when crediting the state agency consultants. AR 62; *see also* AR 211 (citing Petitioner's negative PHQ-2 exams to show she had "no more than mild limitations in her ability to complete work-related mental tasks"). It was not reasonable for the ALJ to selectively disregard Petitioner's subsequent and much higher PHQ-9 scores as purely subjective without further analysis or discussion.[6]

Taken together, these errors draw the ALJ's Step Two findings into serious question. By glossing over Petitioner's complaints, depression screenings, and financial reasons for declining counseling, the ALJ adopted a slanted view of the record on a threshold issue – the severity of a claimant's medically determinable conditions – only meant to screen out weak elements of a petitioner's claims. Because the ALJ did not further consider Petitioner's mental limitations when crafting the RFC, these errors cannot be deemed harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (any error in failing to find an impairment severe at step two is harmless if the ALJ properly considers any resulting limitations in assessing the claimant's RFC).

---

[6] This does not mean an ALJ is required to universally credit PHQ-9 scores or let them drive the disability analysis. An ALJ can discount PHQ-9 scores where there the ALJ finds that the petitioner is not credible. *See Buck*, 869 F.3d at 1049 ("A physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted."). Similarly, the ALJ can give PHQ-9 scores less weight than other conflicting evidence in the record. In this case, however, the ALJ made no adverse credibility findings regarding Petitioner's mental health complaints. Nor did the ALJ fairly acknowledge the PHQ-9 scores and weigh them against the other evidence.

**MEMORANDUM DECISION AND ORDER - 17**

II. <u>The Opinions of Dr. Blauer</u>

Because the ALJ's Step Two findings were intimately intertwined with the ALJ's analysis of Dr. Blauer's opinions and because ALJ has the discretion to enter new findings on remand regarding the persuasiveness of these opinions, the Court does not address the challenges to these portions of the ALJ's decision.

III. <u>The Remedy</u>

When an ALJ's denial of benefits is not supported by the record, district courts possess discretion under 42 U.S.C. § 405(g) to remand for further proceedings or for an award of benefits. *Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1099 (9th Cir. 2014). The proper course turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings and when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Id.* at 1100. In most cases, however, remand for additional investigation or explanation is preferred. *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012). Such remands allow for the ALJ to resolve any outstanding issues in the first instance.

In this case, it remains uncertain whether the ALJ would be required to award Petitioner benefits if the errors in the ALJ's Step Two analysis are corrected. A mental health impairment may be severe without being disabling. Here, there are ample reasons to question whether Petitioner's anxiety, depression, and PTSD are as debilitating as she and Dr. Blauer claim. As the ALJ noted and Respondent stresses, Dr. Blauer's opinion endorses a range of extreme limitations and symptoms that are not supported by the treatment record. AR 62; *see also* Res.'s Br. at 12-13 (Dkt. 23). As for Petitioner's credibility, properly acknowledging her mental health treatment history, including her significantly increased reports of depression from late 2018

throughout 2019, could just as likely result in an adverse credibility determination at Step Four as a ruling in Petitioner's favor.  Finally, even if the ALJ fully credits Petitioner on remand, Petitioner's own complaints strongly suggest that her mental health was not disabling prior to the fall of 2018.  *See supra* pgs. 9-10. In short, a fair and comprehensive evaluation of the record and Petitioner's credibility may lead to a finding (i) that her mental health conditions do not prevent her from working or, (ii) if they did, the onset of this disability occurred later than Petitioner alleges.  The Court will, therefore, reverse and remand for further proceedings under the ordinary remand rule.  On remand, the ALJ is directed to reevaluate the medical record consistent with this disposition.

## ORDER

Based on the foregoing, Petitioner's Petition for Review and the Brief in Support of Petition to Review (Dkts. 1 & 20) are **GRANTED,** and the decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings consistent with this decision.

DATED: August 25, 2022

Raymond E. Patricco
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 19**